ACCEPTED
06-14-00186-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
7/1/2015 3:19:49 PM
DEBBIE AUTREY
CLERK

<u>ORAL ARGUMENT REQUESTED ONLY</u>
<u>IF REQUESTED BY APPELLANT</u>

No. 06-14-00186-CR through 06-14-00189-CR

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

7/1/2015 3:19:49 PM
DEBBIE AUTREY
Clerk

**IN THE SIXTH COURT OF APPEALS**
**TEXARKANA, TEXAS**

————————

# DARRIAN DE'ANTHONY DAVIS-SANDERS,
**Appellant**

**v.**

# THE STATE OF TEXAS,
**Appellee**

————————

**On Appeal in Cause Nos. CR-12-24246 and CR-12-24273 through CR-12-24275**
**From the 336TH Judicial District Court**
**of Fannin County, Texas**

————————

# STATE'S BRIEF

————————

**John B. Setterberg**
**State Bar No. 24043915**
**Assistant Criminal District Attorney**
**Fannin County, Texas**
**101 E. Sam Rayburn Dr., Ste. 301**
**Bonham, Texas 75418**
**903-583-7448**
**903-583-7682 (fax)**

**ATTORNEY FOR THE STATE**

## IDENTITY OF PARTIES AND COUNSEL

The State certifies that the following is a complete list of the parties, attorneys, and other persons with interest in the outcome of this case:

(1) John B. Setterberg, Assistant Criminal District Attorney, Fannin County, Texas, 101 East Sam Rayburn Drive, Suite 301, Bonham, Texas 75418; ATTORNEY FOR THE STATE OF TEXAS.

(2) Micah Belden, 711 N. Travis St., Sherman, Texas 75090; APPELLATE ATTORNEY FOR APPELLANT.

(3) Donald K. Hoover, 101 East Sam Rayburn Drive, Suite 301, Bonham, Texas 75418, TRIAL ATTORNEY FOR APPELLANT;

(4) Darrian De'Anthony Davis-Sanders, TDCJ # 01957802, Eastham Unit, 2665 Prison Road #1; Lovelady, Texas 75851; APPELLANT.

i

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ............................................................. i

TABLE OF CONTENTS.................................................................................... ii

INDEX OF AUTHORITIES............................................................................... iii

SUMMARY OF THE ARGUMENT ...................................................................4

ARGUMENT .................................................................................................5

**The trial court could have rationally denied Appellant's motion to suppress**...7

    a.   Officers had authority to enter the motel room to serve an arrest warrant on the resident tenant ...............................................................................8

    b.   Officers had authority to sweep the room for weapons, drugs, and people who might be hiding because circumstances indicated they would find those things .............................................................................................8

    c.   Officers need not obtain a search warrant in order to ensure their safety while executing an arrest warrant ......................................................11

    d.   Appellant was not under arrest at the time of the search, and officers could not be expected to conduct a protective sweep without asking limited, focused questions to locate the items they were searching for ............................12

CONCLUSION ............................................................................................14

PRAYER ...................................................................................................15

CERTIFICATE OF COMPLIANCE .................................................................16

CERTIFICATE OF SERVICE .........................................................................16

# INDEX OF AUTHORITIES

**Cases**

*Dowthitt v. State*, 931 S.W.2d 244 (Tex. Crim. App. 1996)....................................12

*Ex parte Ewing*, 570 S.W.2d 941 (Tex. Crim. App. 1978) .......................................6

*Ex parte Martinez*, 330 S.W.3d 891 (Tex. Crim. App. 2011) ...............................5, 7

*Green v. State*, 78 S.W.3d 604 (Tex. App. – Fort Worth 2002)...............................8

*Kentucky v. King*, 131 S.Ct. 1849 (2011) ............................................................9, 11

*Maryland v. Buie*, 494 U.S. 325 (1990)...............................................................8, 13

*Michigan v. Long*, 463 U.S. 1032 (1983) ..................................................................9

*Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1991) ..............................7

*Moses v. State*, 105 S.W.3d 622 (Tex. Crim. App. 2003) .........................................7

*Reasor v. State*, 12 S.W.3d 813 (Tex. Crim. App. 2000) ....................................8, 10

*Strickland v. Washington*, 466 U.S. 668 (1984) .......................................................6

*Terry v. Ohio*, 392 U.S. 1 (1968) ........................................................................9, 11

*Voelkel v. State*, 717 S.W.2d 314 (Tex. Crim. App. 1986)........................................9

**Statutes**

TEX. CODE CRIM. PRO. Art. 38.23...........................................................................12

IN THE SIXTH COURT OF APPEALS
TEXARKANA, TEXAS

———————

DARRIAN DE'ANTHONY DAVIS-SANDERS,
Appellant

v.

THE STATE OF TEXAS,
Appellee

———————

TO THE HONORABLE JUSTICES OF THE SIXTH COURT OF APPEALS:

COMES NOW the State of Texas, by and through her assistant criminal district attorney, and respectfully submits this brief in the above-styled and numbered cause. This is an appeal from four convictions of drug-related offenses. (Cl. R. at 34-35).[1] Appellant plead guilty in all four cases and was placed on deferred adjudication on September 19, 2012 for a period of ten years. (Cl. R. at 34-35). The State filed a motion to adjudicate Appellant's probation on May 29, 2014 (Cl. R. at 39). After a hearing, the trial court found both paragraphs alleged in the motions to be true and, in cause numbers CR-12-24246, CR-12-24273 and CR-12-24275, sentenced Appellant to serve 10 years in the Institutional Division of the Texas Department of Criminal Justice (Cl. R. at 52-53). In cause number CR-12-

---

[1] For brevity, references to the clerk's records will be to that in cause no. CR-12-24246 unless otherwise noted

24274, the court sentenced Appellant to serve 60 years (Cl. R. at 53-54). Appellant filed notice of appeal on October 17, 2014 (Cl. R. at 55).

## STATEMENT OF FACTS

On April 22, 2014, Officer Gary Vann of the Garland Police Department received numerous reports that two black males were selling methamphetamine in the parking lot of the Kingsley Inn & Suites (Ct. R. vol. 1, at 11). The Kingsley Inn & Suites was a local motel that was known for high drug and prostitution activity (Ct. R. vol. 1, at 10). Officer Vann also got word from a trusted informant that the two black males had attempted to sell him methamphetamine (Ct. R. vol. 1, at 11). The informant described the men and noted that they were each carrying a handgun (Ct. R. vol. 1, at 11).

Officer Vann then went to the motel office and learned that the room described by the informant was rented and occupied by Brittany Guignard (Ct. R. vol. 1, at 11). He confirmed through his dispatch that Guignard had outstanding arrest warrants and called for assistance in serving them (Ct. R. vol. 1, at 12). Once his back-up arrived, Officer Vann knocked on the door of the motel room (Ct. R. vol. 1, at 12). There was no answer, but Vann could hear people talking inside (Ct. R. vol. 1, at 12). He knocked again, and saw Appellant come to front window and peek out from behind the blinds (Ct. R. vol. 1, at 12). Appellant quickly closed the blinds and moved away from the window, and Officer Vann could hear "a bunch

2

of running around, talking" (Ct. R. vol. 1, at 12). He knocked a third time; still no answer (Ct. R. vol. 1, at 12). When Officer Vann knocked a fourth time, Guignard finally opened the door to the motel room. (Ct. R. vol. 1, at 12).

When the door opened, Officer Vann was immediately confronted with "a lot of smoke – marijuana smoke" (Ct. R. vol. 1, at 12). Vann, who was a drug recognition expert, immediately recognized the odor and saw additional marijuana in plain sight on a table approximately five feet away (Ct. R. vol. 1, at 12). No one else was visible in the tiny one-room area, however. The logical place for hiding was in the enclosed bathroom, which was the only other room in the apartment that was separate from the main room in which he stood, and Officer Vann could hear "rustling around" inside (Ct. R. vol. 1, at 12).

At this point, Officer Vann became concerned that whoever was hiding in the bathroom was destroying drugs or evidence, so he made entry to secure the area (Ct. R. vol. 1, at 12-13). While officers searched for others, Vann made contact with the Appellant, who was just coming out of the bathroom (Ct. R. vol. 1, at 13). Officers also located two other people in the room, one of whom had been hiding under a pile of clothes in the corner (Ct. R. vol. 1, at 13).

Once everyone had been located within the room, Officer Vann asked whether Guignard had any firearms (Ct. R. vol. 1, at 14). She replied that she one in her backpack and pointed it out among the several that were in the room (Ct. R.

3

vol. 1, at 14-15).  Officer Vann recognized Appellant as matching the description of one of the two men selling methamphetamine, so he asked Appellant whether he too had a forearm (Ct. R. vol. 1, at 14-15). Appellant advised that he had one in his backpack and, at Officer Vann's request, identified which bag belonged to him (Ct. R. vol. 1, at 14-15).  Officer Vann verified with Appellant that the weapon was in the main pocket of the bag and looked inside to confirm (Ct. R. vol. 1, at 15).  When he did, Officer Vann saw a Smith & Wesson .40 caliber handgun, as well as the Appellant's driver's license and social security card (Ct. R. vol. 1, at 15). When he removed the weapon to secure it, Officer Vann also saw a large plastic baggy containing a white, crystal substance that was later confirmed to be methamphetamine (Ct. R. vol. 1, at 15, 32).

## SUMMARY OF THE ARGUMENT

Appellant argues that his trial counsel could have moved to suppress the evidence found in his backpack. He complains that officers had no right to enter the room without a warrant, that they had no right to sweep the room once inside, that they had no right to question Appellant about the existence of a firearm, and that they had no right to search Appellant's bag to recover the firearm.

Despite Appellant's arguments to the contrary, officers were authorized to enter to motel room in order to serve an arrest warrant on its occupant, Brittany Guignard. Additionally, officers had authority to enter and secure plainly visible

contraband, and the events leading up to their entry gave officers authority to sweep the room for additional occupants who might be hiding or destroying evidence. Moreover, the reliable information received by the officers indicated that the occupants, one of whom matched the description given by their informant, were armed with firearms, and officers therefore had a right to search for weapons as well. Finally, officers were permitted to ask narrowly focused questions of Appellant in order to ascertain (a) the presence of a weapon, and (b) its location.

In short, nothing the officers did exceeded their authority under the circumstances. Any motion to suppress would therefore not have a reasonable basis in law or in fact, and counsel was under no professional obligation to file it. Likewise, Appellant suffered no harm from counsel's refusal to file a motion because it is not reasonably likely that the motion would have been granted. Because Appellant does not show that the trial court's decision to revoke probation, or its sentence upon revocation, would have been different had counsel filed a motion to suppress, he has not demonstrated harm and his claim should be overruled.

## **ARGUMENT**

Texas courts apply the *Strickland* standard when considering a claim of ineffective assistance of counsel. *Ex parte Martinez*, 330 S.W.3d 891, 900 (Tex. Crim. App. 2011). That standard requires the applicant to show, by a

preponderance of the evidence, that his attorney's performance was unreasonably deficient and that he was actually prejudiced by the deficiency. *Id.* at 900-01.

In assessing deficiency, the reviewing court asks whether counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The reviewing court must be highly deferential to counsel's performance, and must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. The court must look to the totality of the representation and base its decision on the facts of the particular case, with every effort being made to eliminate the distorting effects of hindsight. *Strickland*, 466 U.S. at 689-90. This is because "representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Id.* at 693. Therefore, the mere fact that another attorney might have pursued a different strategy will not support a finding of ineffective assistance of counsel, and the record must affirmatively show that counsel's action was without any plausible basis. *Id.* at 689; *Ex parte Ewing*, 570 S.W.2d 941, 945 (Tex. Crim. App. 1978).

In addition to showing that counsel's performance fell below an objective standard of reasonableness, an appellant must also prove that there is a reasonable probability that but for counsel's errors, the result of the trial would have been

6

different. *Strickland*, 466 U.S. at 694. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. *Id.* at 693. Rather, the appellant must show that the decision reached would reasonably likely have been different absent counsel's error. *Id.* at 696. Though it is not a strict outcome-determinative test, "the difference… should alter the merit of an ineffectiveness claim only in the rarest case." *Id.* at 697.

To successfully demonstrate ineffectiveness for failure to object to evidence, the applicant must show that the trial court would have erred in overruling a motion to suppress. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011). A trial court commits error in admitting evidence over objection if it acts arbitrarily or capriciously, or without any reference to guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1991). The trial court is given a limited right to be wrong, provided its decision falls within the zone of reasonable disagreement. *Id.*; *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). Put another way, Appellant's trial counsel was ineffective only if the trial court could not rationally deny his motion to suppress. If the court could have rationally denied Appellant's motion, then counsel was not ineffective for refusing to present it.

**The trial court could have rationally denied Appellant's motion to suppress.**

Appellant lists a number of reasons why the officers should not have

7

searched his bag, and lumps them all together under the single claim that his trial counsel was ineffective. First, he claims that the protective sweep was itself overbroad and that the officers had no legal right to be in the motel room at all. He also claims that Appellant was unlawfully questioned while in custody and that Appellant did not consent to a search of his belongings.

a. Officers had authority to enter the motel room to serve an arrest warrant on the resident tenant

Law enforcement may enter a suspect's residence in order to execute an arrest warrant, even if no search warrant authorizes their entry. *Green v. State*, 78 S.W.3d 604, 609 (Tex. App. – Fort Worth 2002, no pet.). Although Appellant claims that "[i]t is clear that [Appellant] was the target of the search,"[2] the record shows that officers were attempting to execute an arrest warrant for the owner of the motel room, Brittany Guignard (Ct. R. vol. 1, at 11). Once she answered the door and was positively identified, the officers were authorized to enter the room and arrest Guignard under the warrant.

b. Officers had authority to sweep the room for weapons, drugs, and people who might be hiding because circumstances indicated they would find those things

A protective sweep is not a full search, but one that is quick and limited, typically conducted incident to an arrest, to protect the safety of police officers or others. *Reasor v. State*, 12 S.W.3d 813, 815 (Tex. Crim. App. 2000). Assuming

---

[2] Appellant's br. at 4.

sufficient articulable facts exist to support a reasonable apprehension of danger, officers may, without probable cause or reasonable suspicion, look in closets and other immediately adjoining spaces from which an attack could be launched. *Maryland v. Buie*, 494 U.S. 325, 334 (1990). The sweep may last as long as necessary to dispel a reasonable suspicion of danger. *Id.* at 335.

Even outside of an arrest context, if the circumstances at the time give rise to a reasonable belief that an individual may have immediate control of a weapon, officers are permitted to briefly search the person to ensure their safety. *Terry v. Ohio*, 392 U.S. 1, 26 (1968). They may also search the immediate area surrounding the person and the contents of any open or closed container within that area, provided said container is capable of concealing a weapon. *Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983); *Voelkel v. State*, 717 S.W.2d 314, 316 (Tex. Crim. App. 1986).

Officers may also conduct a warrantless entry and sweep if there are other compelling "exigent circumstances" making those acts objectively reasonable. *Kentucky v. King*, 131 S.Ct. 1849, 1856 (2011). For example, officers may enter and search without a warrant when the circumstances indicate it is reasonably necessary to prevent the imminent destruction of evidence. *Id.* at 1857.

Appellant argues that no circumstances existed that would have allowed a protective sweep of the motel room or, alternatively, that the authority to sweep

was limited to making sure than no one was hiding or destroying evidence. The first argument is misplaced because officers had the ability to sweep the room incident to Guignard's arrest. *See Reasnor*, 12 S.W.3d at 815. The second argument fails because the facts known to the officers, as well as the reasonable inferences drawn therefrom, indicated that there were individuals in the room who were either armed or destroying evidence or both. Officers were therefore authorized to search not only for individuals and drugs, but for weapons as well. In the course of the weapons sweep, officers could open and look inside any container that could reasonably contain a firearm.

The alternative suggested by Appellant – that the officers could not briefly look inside such a container, in this case his bag – would put the officers at an unreasonable risk of harm. These officers were outnumbered by unfamiliar people in a bad neighborhood, they had received reliable information that a person matching Appellant's description was selling drugs and armed with a firearm, and they had detected evidence of immediate drug possession and consumption in the room. Appellant had already shut the blinds when he saw police and hidden in the bathroom while they knocked on the door, so officers knew he was trying to avoid police interaction, and his place of hiding was consistent with one who would flush or hide drugs. Finally, when he was discovered Appellant had in his immediate control an opaque backpack that conceivably could conceal a weapon. Given the

10

entirety of the situation, it would be wholly unreasonable to expect officers to not secure the bag, or to simply hand it over to Appellant without any kind of inspection.

> When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

*Terry v. Ohio*, 302 U.S. 1, 24 (1963).

c.     Officers need not obtain a search warrant in order to ensure their safety while executing an arrest warrant

Appellant suggests that officers should have paused their arrest of Guignard in order to obtain a warrant to search Appellant's backpack. However, nothing in the Constitution requires officers to "call a halt to criminal investigation the moment they have the minimum evidence to establish probable cause," and courts have acknowledged that there are several acceptable reasons law enforcement may not want to immediately obtain a warrant. *Kentucky v. King*, 131 S.Ct. 1849, 1860-61 (2011).

One of them, applicable here, is that officers may wish to obtain more evidence before submitting what might otherwise be considered a marginal warrant application. *Id.* at 1860. Indeed, until officers discovered methamphetamine in Appellant's bag they had little more than an informed suspicion he was involved in

11

drug trafficking. Likewise, at the time of the search, they did not know that Appellant was on felony probation in Fannin County and therefore had no reason to suspect his possession of a firearm was illegal. Thus they likely did not have sufficient evidence to obtain a search warrant for Appellant's bag, and they likely could not have reasonably arrested Appellant for any crime at that time. However, the officers did have a reasonable belief that he was armed while they were trying to execute an arrest warrant and secure the remainder of the motel room. They were therefore justified in searching for weapons to protect their own safety, but it is unreasonable to suggest that they should have halted their investigation in order to obtain a warrant.[3]

d. Appellant was not under arrest at the time of the search, and officers could not be expected to conduct a protective sweep without asking limited, focused questions to locate the items they were searching for

Finally, Appellant argues that the officers impermissibly questioned him before they searched his bag. He appears to claim that because he was temporarily detained pending the officers' sweep, he was "in custody" and officers were required to warn him before any questioning. *See* TEX. CODE CRIM. PRO. Art. 38.23. He cites to *Dowthitt v. State* for the proposition that there are four general scenarios constituting "custody" for purposes of police questioning: (1) when the suspect is physically deprived of his freedom in any significant way, (2) when law

---

[3] This is particularly so because other officers would then have to securely detain Appellant and the others in the motel room while they waited for Officer Vann to obtain the warrant.

12

enforcement tells the suspect he cannot leave, (3) when law enforcement creates a situation that would lead a reasonable person to believe that his freedom has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement does not tell the suspect he is free to leave. *See* 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). However, *Dowthitt* goes on to state that in the first, second or third scenario, the restriction upon the individual's freedom must rise to the level of an arrest, not merely an investigative detention. *Id.* In the fourth scenario, the officer's knowledge of probable cause must actually be conveyed to the suspect. *Id.*

With that in mind, Appellant's claim comes into serious doubt. There is nothing in the record indicating that law enforcement told Appellant he was under arrest or that he could not leave. There is likewise nothing in the record to suggest Appellant tried to leave or asked to leave and was prevented from doing so. In fact, there is nothing that suggests law enforcement informed Appellant that he was even a suspect or that there was probable cause to arrest him. Rather, they simply asked him whether he had a firearm on or near his person, and where it was located. Once they ascertained its location in the Appellant's bag, it became necessary for officers to open the bag in order to (a) confirm the truth of his statements, and (b) secure the weapon and "dispel the reasonable suspicion of danger." *See Maryland v. Buie*, 494 U.S. 325, 335 (1990). Because Appellant was

13

not under arrest or otherwise "in custody" at the time the officers spoke to him, and because their questions were limited to locating the immediate threat of a firearm on or near his person, officers were not require to warn him before asking questions. Appellant's trial counsel was therefore not ineffective for failing to move to suppress his answers to those questions.

## CONCLUSION

Trial counsel's representation did not fall below an objective standard of reasonableness, and there is nothing to suggest that Appellant would have obtained a different result or sentence had counsel decided to file a motion to suppress. Such a motion was not likely to succeed, as officers had a legal right to enter the residence and, once there, to sweep the residence for people, weapons, and drugs. Having located the Appellant under suspicious circumstances and under a reasonable impression that he might be armed, the officers were justified in searching not only his person and the immediate area, but also the bag within his immediate control. The simple fact that counsel <u>could</u> have filed a motion to suppress, or that another attorney <u>might</u> have, is simply not enough to sustain a claim of ineffective assistance. Appellant must show, from the record, that counsel's decisions were without any plausible basis. Given the state of the law in Texas and the particular facts of this case, he has failed to do so.

Moreover, Appellant has failed to show that the outcome of the case would

have been different had counsel filed the proposed motion. Even if, *arguendo*, the law was murky or unclear on the propriety of the officers' actions, there is still no reasonable probability that the trial court would have granted the motion or handed down a different sentence. In sum, trial counsel acted on an informed and reasoned consideration of the law and the facts of his client's case. Appellant's claim of ineffective assistance must therefore fail, and his point of error should be overruled.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, there being no reversible error in the trial of this case, the State respectfully moves this Court to overrule Appellant's point of error and affirm his conviction. The State further prays for any and all such additional relief as the Court may deem just and appropriate.

Dated: <u>July 1, 2015</u>

Respectfully submitted,

/s/    *John B. Setterberg*
John B. Setterberg
State Bar No. 24043915
Assistant Criminal District Attorney
Fannin County, Texas
101 East Sam Rayburn Dr., Suite 301
Bonham, Texas 75418
903-583-7448
903-583-7682 (fax)

15

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing document contains 3,601 words, exclusive of the portions described by TEX. R. APP. P. 9.4 (i)(1), as computed by the computer program used to prepare the document.

/s/    *John B. Setterberg*
John B. Setterberg
Assistant Criminal District Attorney
Fannin County, Texas

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served electronically to the individual listed below on this the 1st day of July, 2015.

/s/    *John B. Setterberg*
John B. Setterberg
Assistant Criminal District Attorney
Fannin County, Texas

Micah Belden
711 N. Travis
Sherman, Texas 75090
ATTORNEY FOR APPELLANT

16